UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY R. ROBERTS,<br><br>                  Plaintiff,<br><br>v.<br><br>CRAIG CONWAY et al.,<br><br>                  Defendants. | Civil Action No. 2:09-cv-5622 (SDW)<br><br><br><br><br><br>OPINION<br><br>August 3, 2010 |

This matter comes before the Court upon Defendants' joint motions[1], *see* Docket Entries Nos. 12 and 18, seeking dismissal of Plaintiff's Complaint, *see* Docket Entry No. 1, pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motions"). This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, The Motions will be GRANTED, Plaintiff's complaint will be DISMISSED with prejudice, and Plaintiff's pending applications will be DENIED as moot.

## BACKGROUND

Plaintiff is a sexually violent predator civilly committed upon conclusion of his prison term, pursuant to the Sexually Violent Predator Act (the "SVP Act"), N.J.S.A. 30:4-27.24, *et seq.* Pursuant to the SVP Act, the Department of Corrections is responsible for providing secure

---

[1] The Court notes that Defendant Craig Conway, Administrator of the Adult Diagnostic Center and the Special Treatment Unit, did not join in the motion to dismiss Plaintiff's Complaint. However, all the reasonings discussed herein are applicable to Conway.

1

facilities for the confinement of sexually violent predators, and is also responsible for the safety and security of those facilities. N.J.S.A. 30:4-27.26.

While being civilly committed, Plaintiff married his current spouse. On May 20, 2005 and again on August 30, 2007, Roberts made requests for conjugal visits with his wife. That request was denied by Defendants, causing Plaintiff to initiate a legal action in state court on September 25, 2007. *See R.R. v. Dep't of Corrections*, 404 N.J. Super. 468 (N.J. Super. App. Div. 2009). The Superior Court of New Jersey, Appellate Division, dismissed Plaintiff's action for lack of merit, and the Supreme Court of New Jersey denied certification. *See R.R. v. Dep't of Corrections*, 198 N.J. 474 (2009).

The Appellate Division's above-mentioned decision summarized the basis of Plaintiff's state action as follows:

> [Plaintiff,] who was civilly committed [as a] sexually violent predator . . . following service of the maximum term of a sentence imposed for kidnapping and other crimes [and who had previously been convicted of three counts of first-degree aggravated sexual assault], appeals . . . denial . . . of his request for marital privacy and conjugal visitation [asserting that ] visitation rules . . . violate his right to marital privacy[,] . . . disenfranchise him from his constitutional rights [under the] 4th, 5th, 8th, 9th, 13th[,] and 14th [A]mendment[s, and] argu[ing] that he has a right to . . . freedom from government intrusion .
> . . .
> The record . . . discloses that, [on] May 20, 2005, [Plaintiff] requested . . . "marital privacy and conjugal visitation." That request was denied as unauthorized, as were requests in 2006 and 2007.

*See R.R.*, 404 N.J. Super. at 471-73 (citations, quotation marks, and footnotes omitted).

The State Court examined Plaintiff's claims under the state's provisions, *see id.* at 473-76, finding that the bar on conjugal visits was not arbitrary, capricious, nor unreasonable. *See id.* Then, considering Plaintiff's constitutional challenges, the state court described the deficiencies of Plaintiff's argument as follows:

2

> [Plaintiff] argues . . . that his right to privacy and conjugal visits is constitutionally protected . . . . In this regard, courts have held in a penal context that, while the right to marry is constitutionally protected, the right to conjugal visits and marital privacy during incarceration does not enjoy similar constitutional protection . . . . The right to conjugal visits with sexually violent predators who have been civilly committed and are lodged in secure facilities has not been addressed in a published opinion. Nonetheless, it is clear that the liberty interests of civilly committed individuals may be abridged if doing so is related to the government's interests in treatment and security. In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance the liberty of the individual and the demands of an organized society. The proper standard for determining whether a State has adequately protected the rights of an involuntarily committed individual requires that the courts make certain that professional judgment in fact was exercised. A decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment. In the present case, [Plaintiff] has not overcome the presumption of validity . . . [n]or has he articulated any basis for a determination by us that his interest in liberty and conjugal relations was improperly balanced against the State's dual interest in security and rehabilitation.

*Id.* at 473-78 (citations, quotation marks, and footnotes omitted).[2]

Subsequent to the dismissal of Plaintiff's state action, Plaintiff submitted the instant Complaint on November 2, 2009. The complaint is virtually identical in substance to the challenges Plaintiff raised before the state courts: generally, Plaintiff asserted that the visitation regime had to be deemed too rigid and unconstitutional for civilly committed individuals because Plaintiff was denied conjugal visits with his wife. *See* Docket Entry No. 1.

Defendants asserted that Plaintiff's instant challenges are not only barred by the doctrines of *res judicata* and *Rooker-Feldman*, but is also untimely. *See* Docket Entry No. 12, at 3-9, 9-11. This Court will address Defendants' points *seriatim*.

**DISCUSSION**

I.  Res Judicata

---

[2] The state court similarly examined Plaintiff's equal protection challenges and dismissed them as meritless. *See R.R.*, 404 N.J. Super. at 479-82

3

In its broadest sense, *res judicata* refers to the binding effect of a judgment in a prior case on the claims or issues in the pending litigation. The Third Circuit expressly merged the doctrines of claim preclusion and issue preclusion under the broad, umbrella term "*res judicata*." *See Hogg's v. New Jersey*, 352 Fed. App'x 625 (3d Cir. 2009). A claim – for purposes of *res judicata* – includes not only those matters actually addressed by the prior judgment, but also those matters which could have been raised in that action: i.e., matters that arise from the same facts, occurrences, or transactions that were the basis of a prior action fall within the scope of claim preclusion. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("*Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding"). Under New Jersey law, *res judicata* applies when: (1) the judgment in the first action is valid, final and on the merits; (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the first action. *See Velasquez v. Franz*, 123 N.J. 498, 505-06; see also Restatement of Judgments (Second) § 19 (1982).

Here, neither party disputes that the decision rendered against Plaintiff in the Superior Court was valid, final, and on the merits. The Appellate division panel concluded that Plaintiff's constitutional rights were not violated by the Department of Correction's policy. Moreover, under New Jersey's entire controversy doctrine, Defendants[3] are all related parties who identify with Defendant Department of Corrections from the state court litigation for preclusion purposes. *See Culver v. Ins. Co. of N. Am.*, 115 N.J. 451 (1989) (the court held the entire controversy

---

[3] George Hayman is the Commissioner of the New Jersey Department of Correction. Jennifer Velez is the Commissioner of the New Jersey Department of Human Services. Kevin Marton is the Director of the Mental Health Division of the New Jersey Department of Human Services. Merril Main is the Director of Psychology at the Special Treatment Units. Ann Milgram is the former Attorney General for the State of New Jersey.

4

doctrine "requires that all issues of a single dispute between the parties must be completely determined in one action."); *See also Cogdell v. Hospital Ctr. at Orange*, 116 N.J. 7 (1989) (the court held the entire controversy doctrine applies to related claims *and* related parties) (emphasis added); *Rodziewicz v. Beyer*, 809 F. Supp. 1164, 1167 (D.N.J. 1992) (the court held that employees of Department of Corrections are in identity with the Department for claim preclusion under New Jersey law). Finally, neither party disputes that Plaintiff's current claim arises out of the same factual transactions presented by the same Plaintiff for state court review. Indeed, Plaintiff raised the same claim – that he was denied conjugal visits – in both the state case and in the present action. Therefore, all of Plaintiff's claims that were either actually raised or could have been raised during Plaintiff's state action falls squarely within the sphere of *res judicata* and will be dismissed with prejudice. *Brown*, 442 U.S. at 131.

II.     Rooker-Feldman

Federal district courts are precluded from acting as courts of appeal by hearing cases already heard by state courts. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 162 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (the "*Rooker-Feldman* doctrine"). The *Rooker-Feldman* doctrine bars district courts from "entertain[ing] constitutional claims that have been previously adjudicated in state court or that are inextricably intertwined with a state adjudication." *Whiteford v. Reed*, 155 F.3d 671, 673-74 (3d Cir. 1998) (citations omitted). This rule generally applies whether the state court judgment is civil or criminal, and whether it construes state or federal law. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980). It applies to issues that were actually raised or "inextricably intertwined" with adjudication by a state court.[4]

---

[4] The *Rooker-Feldman* doctrine is qualitatively different from the doctrine of *res judicata* in that the *Rooker-Feldman* doctrine is: (a) jurisdictional, and thus, is not waivable (and the dismissal under the doctrine is not on the merits but on the grounds of lack of jurisdiction); (b) is premised entirely on federal law and does not look to state law to determine preclusive effect; and (c) usually will not bar actions by prior non-parties even if they would be in

*See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 418 (3d Cir. 2003). If the *Rooker-Feldman* doctrine applies, the district court must dismiss the case on jurisdictional grounds. *See id.* at 419.

The proceedings at bar had been initiated after the Supreme Court of New Jersey denied Plaintiff certification. Plaintiff, an unsuccessful state court litigant, re-asserts substantively similar claims, claims injury at the hands of the state court and seeks this Court's invalidation of a validly entered state court determination. Therefore, Plaintiff's claims appear to be subject to dismissal for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that the doctrine applies when a losing litigant in state court seeks, through a federal district court suit, the review and reversal of a state court judgment that was rendered before the district court proceedings commenced); *see also FOCUS v. Allegheny Cnty. Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996) (holding that the *Rooker-Feldman* doctrine divests federal courts of jurisdiction where a federal action would be the equivalent of an appellate review of a state court judgment).

Moreover, while this Court is mindful of the Court's obligation to construe Plaintiff's factual assertions liberally, *see Erickson v. Pardus*, 551 U.S. 89 (2007), and that the Court's liberal construction could yield legal claims other than those raised or addressed during Plaintiff's state proceedings, such additional claims related to his involuntary civil commitment would nonetheless be "inextricably intertwined" with Plaintiff's state adjudication and, hence, subject to the reach of the *Rooker-Feldman* bar. *See ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d

---

privity with a state court loser. *See Lance v. Dennis*, 546 U.S. 459 (2006); *Exxon Mobil*, 544 U.S. at 293; *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 384 (1985). Furthermore, the *Rooker-Feldman* doctrine bars a lower federal court from hearing a claim that is "inextricably intertwined" with a state court judgment that preceded the federal suit, even if the state court did not pass directly on that claim. *See Feldman*, 460 U.S. at 482 n.16; *see also Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192-193 (3d Cir. 2006).

205, 210-11 (3d Cir. 2004); *Desi's Pizza,* 321 F. 3d at 419. Therefore, Plaintiff's claims are not cognizable in this civil rights action and are dismissed accordingly.

III. Statute of Limitations

A court may dismiss a complaint where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). In New Jersey, Section 1983 claims must be filed within two years of accrual of the cause of action. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." *Oshiver v. Levin, Fishbein, Sedran and Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994). Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, should have been known to Plaintiff. *Id.* Moreover, a claim accrues in a federal cause of action upon knowledge of the actual injury, not that the injury constitutes a legal wrong. *Id.*

Defendants maintain that Plaintiff's instant complaint, dated November 2, 2009, is untimely because Plaintiff's claims accrued when he filed for and was denied conjugal visitation in May 2005 and November 2006. *See* Docket Entry No. 12-1, at 10. Furthermore, Defendants argue Plaintiff's instant complaint is also untimely even if Plaintiff's claims accrued when he wrote to commissioner Hayman's office on August 30, 2007 and received a denial of his request for conjugal visitation. *Id.*

In the spirit of construing *pro se* complaints liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), this Court finds the content of the exhibits submitted by Plaintiff with regard to his 2005 and 2006 inquiries could be interpreted to suggest that the staff person responding to Plaintiff's grievances merely indicated that: (a) conjugal visits were unavailable at the particular

7

STU where Plaintiff was housed rather than at any STU, *see* Docket Entry No. 1, at 11 ("[t]here are no conjugal visits here at the STU"); or that (b) conjugal visits were not allowed to Plaintiff simply because the responding staff member was, at the time, unaware of an applicable mandate that allowed civilly committed sexually violent predators conjugal visits. *See* Docket Entry No. 12-1 at 12 ("There are no documents . . . that I am aware of that give[] sexual predators under civil confinement status a right to conjugal visitation"). Since either upon being transferred to another STU or upon contacting a more informed prison staff member could, theoretically, obtain conjugal visits, the Court finds it unduly overreaching to conclude that Plaintiff's injury necessarily accrued upon his receipt of these denials.

In contrast, the August 30, 2007 response received by Plaintiff from the Office of Commissioner indicated (the "2007 response") that Plaintiff would not be availed to conjugal visits regardless of whichever STU he was housed at and that denial of his request for conjugal visitation was unambiguous and conclusive. *See id.* at 15-16 (informing Plaintiff that "conjugal visits are not permitted in our facilities"). Furthermore, Plaintiff's initiation of legal action in state court on September 25, 2007 in response to the denial suggests Plaintiff not only had knowledge of the actual injury, but also believed the alleged injury constituted a legal wrong. Therefore, though constructing Plaintiff's complaint liberally, this Court nevertheless finds that Plaintiff's period of limitation began to run on August 30, 2007 and Plaintiff's instant complaint, dated November 2, 2009, was submitted after his two years limitations period expired.

Moreover, this Court is aware that New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," where a plaintiff has, "in some extraordinary way," been prevented from asserting rights, or where a plaintiff has timely asserted rights mistakenly either by defective

pleading or in the wrong forum. *See Freeman v. State*, 347 N.J. Super. 11, 31, *cert. denied*, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

Here, even though Plaintiff was duly served with Defendants' Rule 12 motions asserting, *inter alia*, the statute of limitations issue, and upon such services, filed his response, a re-response, and even a string of motions seeking injunctive relief, a temporary restraining order, and appointment of counsel, *see* Docket Entry Nos. 13, 19, 20, 27, 28, and 30, no submission made by Plaintiff asserted any basis that could give this Court a reason to grant Plaintiff equitable tolling.

In light of Plaintiff's failure to offer the Court any equitable fact contradicting Defendants' assertion that Plaintiff's complaint is untimely, this Court concludes that the period of limitations – for the purposes of the complaint – shall not be tolled. Accordingly, the complaint will be dismissed as untimely.

**CONCLUSION**

For the foregoing reasons, Plaintiff's complaint will be dismissed as meritless, for lack of jurisdiction, and as untimely.

_____
Susan D. Wigenton
U.S.D.J.

Cc: Parties